**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RICHARD LLOYD ODOM,<br>Petitioner,<br><br>v.<br><br>KENNETH NELSEN,[1]<br>Respondent. | ) | No. 2:18-cv-02355-SHL-atc |

**ORDER DENYING PETITIONER'S HABEAS RULE 6 MOTION FOR DISCOVERY**

Before the Court is Petitioner Richard Lloyd Odom's Habeas Rule 6 Motion for Discovery. (ECF No. 64.) Warden Kenneth Nelsen filed a Response in Opposition to Petitioner's Motion for Discovery. (ECF No. 70.) For the reasons stated below, Odom's Motion is **DENIED**.

## I. BACKGROUND

In 1991, Odom was accused of raping and murdering an elderly victim. See Odom v. State, No. W2015–01742–CCA–R3–PD, 2017 WL 4764908, at *1 (Tenn. Crim. App. Oct. 20, 2017), perm. app. denied, (Tenn. Apr. 23, 2018). (See also ECF No. 17-2.) A jury convicted him of first-degree felony murder and sentenced him to death. Id.[2] On direct appeal, the

[1] By Order dated May 4, 2026, this Court directed the Clerk to update the docket to terminate all references to Tony Mays and to add Kenneth Nelson, the current Warden at Riverbend Maximum Security Institution, as the respondent. (ECF No. 83 at PageID 15352 (first citing Fed. R. Civ P. 25(d); and then citing Riverbend Maximum Security Institution, TN Department of Correction, https://www.tn.gov/correction/state-prisons/state prison-list/riverbend-maximum-security-institution.html (last accessed Sep. 14, 2026)).) The Clerk is reminded of the May 4, 2026, Order that all references to Tony Mays shall be terminated.

[2] Odom did not present evidence during the guilt phase of trial, and the prosecution's evidence included a statement he gave to police confessing to the rape and murder. Id. at *2.

Tennessee Supreme Court vacated the death sentence and remanded the case for a new sentencing hearing. (ECF No. 17-19.) Odom was, again, sentenced to death on remand. (ECF No. 18-3 at PageID 1965.) The Tennessee Court of Criminal Appeals affirmed. (See ECF No. 19-25.) Then, yet again, the Tennessee Supreme Court remanded the case for re-sentencing, where the jury sentenced Odom to death for a third and final time. (See ECF No. 19-31; ECF Nos. 20-1 at PageID 5454; ECF No. 20-14 at PageID 7137–39.) The Tennessee Supreme Court affirmed. (ECF No. 20-28.)

The post-conviction court denied relief (see ECF No. 21-5 at PageID 8809-8911), and the Tennessee Court of Criminal Appeals affirmed. Id. at *56. (ECF No. 22-35.) The Tennessee Supreme Court denied Odom's application for permission to appeal. (ECF No. 22-40.) Odom then filed a pro se federal habeas petition (see ECF No. 1) and an amended petition with the assistance of counsel. (See ECF No. 26).

## II. DISCOVERY SOUGHT

Odom now requests the depositions of: (1) trial counsel Carolyn Watkins; (2) resentencing counsel Gerald Skahan;[3] (3) resentencing counsel Marty McAfee; (4) Memphis Police Department ("MPD") fingerprint examiner James Holder; (5) MPD Sergeant Ronnie McWilliams; (6) MPD Sergeant R.D. Roleson; (7) MPD Lieutenant J.D. Douglas; (8) MPD transcriptionist Tonia D. Tiller; and (9) MPD transcriptionist Taertie L. Thompson. (See ECF No. 64 at PageID 14831.) Odom also requests subpoenas for documents from the Office of the Post-Conviction Defender ("OPCD") and the MPD. (See id. at PageID 14832; ECF No. 64-1 at PageID 14836–37.)

---

[3] Mr. Skahan passed away on May 5, 2026. Former Shelby County Judge Dies at 61, TENN. BAR ASS'N (May 7, 2026), https://www.tba.org/?pg=LawBlog&blAction=showEntry&blogEntry=145004 (last visited Sep. 28, 2026).

## III. RELEVANT FEDERAL HABEAS CLAIMS

Odom seeks the above-outlined discovery to support the following ineffective assistance of trial counsel claims and claims about his statement to police: [4]

> CLAIM TWO: Mr. Odom's counsel were constitutionally ineffective in failing to investigate, develop, and present proof of Mr. Odom's intellectual disability and resulting exemption from execution (the "IAC-Atkins[5] claim");
>
> CLAIM THREE: Counsel ineffectively failed to investigate and present compelling mitigation proof at sentencing ("the IAC-Mitigation claim");
>
> CLAIM FOUR: Ineffective assistance in investigating and presenting proof regarding Richard Odom's culpability for the murder ("the IAC-Investigation claim");
>
> CLAIM FIVE: Counsel provided constitutionally ineffective representation due to their failure to object to and properly challenge latent fingerprint evidence ("the IAC-Fingerprint claim"); and
>
> CLAIM NINETEEN: Petitioner's statement was taken in violation of the 5th, and 14th Amendments to the United States Constitution in that 1) it was not given freely and voluntarily; and 2) the failure of the police to record Petitioner's statement violated his right to the due process of law (the "Statement Claim").

(See ECF No. 26 at PageID 14118–68, 14237–44; ECF No. 64-1 at PageID 14837, 14844–45, 14851.)

## IV. LEGAL STANDARD

Discovery in habeas cases is controlled by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). Rule 6(a) states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." See also Cornwell v. Bradshaw, 559 F.3d 398,

---

[4] Odom also refers to Claims 11, 12, 15, 16, 18 & 20 in his discovery motion. (ECF No. 64-1 at PageID 14837 n.1.) However, he does not discuss those claims or relate them to any of his discovery requests.

[5] See Atkins v. Virginia, 536 U.S. 304 (2002).

410 (6th Cir. 2009). However, "bald assertions and conclusory allegations do not provide sufficient ground[s] to warrant requiring the state to respond to discovery or to require an evidentiary hearing." Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (citation omitted). The petitioner has the burden of demonstrating the materiality of the information he seeks. See Davis v. Gross, No. 18-5406, 2018 WL 8138536, at *2 (6th Cir. Sept. 10, 2018). The requested discovery must be materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief." Stanford, 266 F.3d at 460.

Moreover, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2241, et seq., "restricts the ability of a federal habeas court to develop and consider new evidence." Shoop v. Twyford, 596 U.S. 811, 819 (2022). Before deciding whether to grant an evidentiary hearing or "otherwise consider new evidence," a district court first examines whether the evidence a habeas petitioner requests "could be legally considered in the prisoner's case." Shoop, 596 U.S. at 820 (citing Shinn v. Ramirez, 596 U.S. 366, 390 (2022)). The AEDPA permits "a federal court [to] admit new evidence . . . in two quite limited situations." Id. at 819 (quoting 28 U.S.C. § 2254(e)(2)). The claim must either "rely on a 'new' and 'previously unavailable' 'rule of constitutional law'" made retroactive by the Supreme Court, or "rely on a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. (quoting 28 U.S.C. § 2254(e)(2)(A)). If a prisoner can satisfy either exception, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that, with this evidence, "no reasonable factfinder" would have convicted him of the crime charged. Id.; see also Mammone v. Jenkins, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

## V. ANALYSIS

Odom faces several legal hurdles to the discovery he seeks. He argues that he should be allowed to conduct discovery because his federal habeas claims are fundamentally different from

his state post-conviction claims. (ECF No. 77 at PageID 15050–62.) Even still, the Warden argues that Odom's discovery requests are overbroad, unduly burdensome[,] or . . . founded upon pure speculation[,]" and that discovery on claims adjudicated on the merits in state courts is impermissible. (ECF No. 70 at PageID 15002.) Certainly, a federal court will not consider additional evidence "when the state court has previously decided the same merits issue later presented to the federal court." McClellan v. Rapelje, 703 F.3d 344, 351 (6th Cir. 2013); see also Pinholster, 563 U.S. at 187 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so."). As described below, no federal claim falls outside that which was encompassed within his state post-conviction claims.

As for procedural default, Odom offers several arguments. He contends that serious dysfunction in the OPCD was an "external impediment" that serves as "cause" to excuse the procedural default of some of his ineffective assistance of trial counsel claims. (Id. at PageID 15038–49.) On other claims, Odom fully concedes procedurally default, but contends that discovery is necessary for him to show "cause and prejudice" for any default. (ECF No. 26 at PageID 14178–20; ECF No. 49 at PageID 14717, 14732; ECF No. 64-1 at PageID 14835–36, 14847–49.) Finally, he contends that some claims were partially presented in state court, but, as stated in his federal habeas petition, these claims are so altered that they constitute new, procedurally defaulted claims for which he can show "cause and prejudice" for the default. (ECF No. 49 at PageID 14714–32.) In response to all these arguments, the Warden contends that (1) Odom is barred from conducting discovery on claims that were adjudicated on the merits in state court; (2) new evidence not in the record before the state court is beyond what a federal court can consider; and (3) Odom cannot show good cause to excuse procedural default. (ECF

No. 70 at PageID 15002.) To be sure, when a prisoner fails to present a claim in state court, and the state court would dismiss the claim on that basis, the claim is procedurally defaulted. Shinn, 596 U.S. at 371. A federal court may hear a procedurally defaulted claim, but only if a prisoner can demonstrate "'cause' to excuse the default and 'actual prejudice' if the federal court were to decline to hear [the] claim." Id. at 371, 379 (citations omitted). As explained below, no such showing has been made.

Finally, Odom acknowledges that the Statement Claim was exhausted in state court, but still argues that counsel failed to challenge its admission. (ECF No. 49 at PageID 14752.) Because this claim has been fully adjudicated on the merits, and no good cause for additional evidence has been shown, this claim fails as well.

**A. Ineffective Assistance of Trial Counsel Claims**

Several of Odom's federal habeas claims posit that various counsel provided ineffective assistance. An ineffective assistance of counsel claim requires a party to show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Prejudice exists when "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**i. The IAC-Atkins Claim**

Odom's IAC-Atkins claim focuses on counsel's purported failure "to investigate, develop, and present proof of . . . Odom's intellectual disability and resulting exemption from execution." (ECF No. 26 at PageID 14118.) Critical to this claim is the "Constitution's . . .

substantive restriction on the State's power to take the life of a[n] [intellectually disabled individual]." Atkins v. Virginia, 536 U.S. 304, 321 (2002) (citation omitted).[6]

Odom argues that his "initial trial counsel . . . , subsequent re-sentencing counsel . . . , and post-conviction counsel . . . were ineffective for failing to investigate, develop, and present proof of his intellectual disability and resulting Atkins-exclusion from the death penalty." (ECF No. 26 at PageID 14118–21.) Odom acknowledges that this claim is procedurally defaulted. (ECF No. 49 at PageID 14717.) But he contends that he is entitled to factual development, discovery, and an evidentiary hearing to show cause and prejudice and to prove the merits of his claim. He asserts that "[b]ased on the copious amount of information that was available at the time of resentencing," counsel should have been aware of his intellectual disability and ineligibility for the death penalty under Atkins, but failed to investigate and present such evidence. (ECF No. 64-1 at PageID 14837.) Odom argues that, had his resentencing counsel investigated and presented this evidence, he would not have been sentenced to death. (Id. at PageID 14837, 14839.)

Odom believes that the best way for him to determine whether counsel erred is to depose resentencing counsel about their investigative efforts, strategic thinking, and litigation strategy. (Id. at PageID 14839.) He argues that he has shown good cause for the depositions of resentencing counsel because their testimony would resolve any factual disputes that could entitle him to relief. (Id.)

---

[6] To prove an intellectual disability, a petitioner must show: (1) significantly subaverage intellectual functioning; (2) adaptive deficits assessed using both clinical evaluation and individualized measures; and (3) the onset of these deficits when the defendant was a minor. See Hall v. Florida, 572 U.S. 701, 710 (2014); see also Moore v. Texas, 586 U.S. 133, 135 (2019) (per curiam).

However, the Warden contends that Odom has not shown cause and prejudice to excuse his procedural default. (ECF No. 70 at PageID 15007.) Similarly, he argues that Odom has failed to demonstrate how discovery could produce evidence to excuse the default. (ECF No. 70 at PageID 15007.) He further asserts that Odom's IAC-Atkins claim was procedurally defaulted on post-conviction appeal, making Martinez's exception to procedural default inapplicable. (See id. at PageID 15006–07 (arguing that Odom's "reliance on Martinez . . . to excuse the default is unavailing [because] . . . Martinez does not apply to claims procedurally defaulted on post-conviction appeal").)

Finally, the Warden submits that Odom has failed to show by clear and convincing evidence that he is intellectually disabled, ineligible for the death penalty, or actually innocent. (ECF No. 70 at PageID 15007.) As such, he argues that Odom has no clear entitlement to discovery and that discovery would not overcome the procedural default of his IAC-Atkins claim. (Id. at PageID 15007–08.)

The Warden is correct, Odom is not entitled to discovery on his IAC-Atkins claim. First, the claim is procedurally defaulted—Odom's post-conviction counsel argued that trial counsel were ineffective for failing to investigate and present evidence that Odom was intellectually disabled and ineligible for the death penalty. (ECF No. 21-4 at PageID 8579–80; see ECF No. 21-5 at PageID 8850–52.) The post-conviction court rejected that claim on the merits, and Odom failed to raise that claim on post-conviction appeal. (ECF No. 21-4 at PageID 8579–80; ECF No. 21-5 at PageID 8850–52; ECF No. 22-34 at PageID 13735.) Moreover, Odom has not shown how the deposition of resentencing counsel would overcome the procedural default. "[A]ttorney error at post-conviction appellate proceedings" are procedurally defaulted "because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an

ineffective-assistance-of-trial-counsel claim." West v. Carpenter, 790 F.3d 693, 698 (6th Cir. 2015) (citing Wallace v. Sexton, 570 F. App'x 443, 453 (6th Cir. 2014)).

Odom's argument as to dysfunction at the OPCD is similarly unavailing. He insists that discovery is warranted because dysfunction in the OPCD was an "external impediment" that establishes cause to overcome procedural default. (*See* ECF No. 77 at PageID 15049, 15061.) But for "cause" to exist, Odom must show that "an objective external factor prevented him from timely appealing" the post-conviction court's denial of relief on his ineffective assistance of counsel claim related to intellectual disability. See Dickerson v. Warden, Ross Corr. Inst., 750 F. App'x 458, 460 (6th Cir. 2018) (quoting Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004)). Here, any dysfunction within the operations of the OPCD are not external to the defense. The OPCD represented Odom, and, as such, were not external to the defense. Moreover, "[n]egligence on the part of a prisoner's post[-]conviction attorney does not qualify as 'cause'" to excuse procedural default. Maples v. Thomas, 565 U.S. 266, 280 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Outside of the narrow exception recognized in Martinez, a prisoner in a federal habeas case bears the risk for all attorney errors made during the post-conviction representation. See Shinn, 596 U.S. at 380, 383. The operations at the OPCD do not constitute an external impediment to establish cause for the procedural default of his IAC-Atkins claim.

Finally, and critically, Odom has not identified what additional testimony he seeks from resentencing counsel, or how that testimony would entitle him to relief. Based on the evidence presented at the post-conviction proceedings, Odom is unlikely to show prejudice because he lacks proof of intellectual disability. For example, a clinical neuropsychologist testified on his behalf at his post-conviction hearing that his neuropsychological impairment was not

synonymous with intellectual disability. Odom, 2017 WL 4764908, at *12. Additionally, James Merikangas, a psychiatrist who testified on Odom's behalf at his post-conviction hearing, was unable to support a diagnosis of intellectual disability. (See ECF No. 21-5 at PageID 8850–52.) Based on this testimony, the post-conviction court determined that Odom was "clearly not intellectually disabled" under Tennessee law. (Id. at PageID 8852.)

For these reasons, Odom's requested discovery on his IAC-Atkins claim is **DENIED**.

### ii. The IAC-Mitigation Claim

Odom's IAC-Mitigation claim overlaps with his IAC-Atkins claim. In it, Odom alleges that,

> Trial counsel deficiently failed to investigate, develop, and present evidence of Mr. Odom's neurological and neuropsychological impairments. Trial counsel also failed to conduct a thorough and complete biopsychosocial history investigation which would have led to scores of lay witnesses who were available to testify about the lifetime of trauma suffered by Petitioner as well as the symptoms of his disabling mental disease. 2007 trial counsel knew, or should have known, that Mr. Odom's family, medical, and mental health history required a thorough biopsychosocial history investigation as well as neuropsychological, neurological, and psychiatric evaluations and consultations.

(See ECF No. 26 at PageID 14121–22.) Odom alleges that multiple red flags should have alerted his trial counsel to the fact that he was impaired, including: (1) psychological evaluations and letters from Dr. Daniel Cox; (2) an intelligence assessment from the Mississippi State Hospital during a competency evaluation; (3) an affidavit from clinical psychologist John Hutson;[7] and (4) requests for a PET scan and neuropsychological testing from psychiatrist William Kenner, a

[7] Hutson "concluded that . . . Odom was unquestionably competent [and] sane, [but] likely suffered from a personality disorder, which . . . Huston acknowledged was not relevant to . . . Odom's defense." (See ECF No. 22-30 at PageID 13393.) Hutson submitted an affidavit for the 1999 resentencing and opined that additional psychological evaluation and a neurological examination was necessary to explore neurological factors relevant to sentencing. (See ECF No. 21-17 at PageID 10189.)

defense expert. (Id. at PageID 14123–25.) Odom argues that, despite these red flags, trial counsel failed to conduct a thorough and complete investigation into his brain damage and social history. (Id. at PageID 14125.) Odom asserts that his resentencing counsel determined that any investigation into Odom's brain damage would be irrelevant to a defense premised on Odom's trauma-filled life and lack of future dangerousness. (Id.) He alleges that, had resentencing counsel conducted a thorough investigation, they would have uncovered "far more compelling stories of the overwhelming and unremitting trauma Mr. Odom suffered," and would have been able to present witnesses to testify as to his brain trauma and the trouble that trauma caused him. (Id. at PageID 14125–26.)

Odom further alleges that Gloria Shettles, a mitigation specialist who testified for him at his second sentencing, merely presented a "truncated, cursory, conclusory list of symptoms" without an expert evaluation, diagnosis, or opinion. (Id. at PageID 14127–28.) Odom contends that, despite resentencing counsel's view that his brain damage was not relevant to the defense strategy, they requested funding two months before trial to hire clinical psychologist Joseph Angelillo. (Id. at PageID 14128.) Odom alleges that Hutson's findings that he likely had a personality disorder and Angelillo's finding that he had a schizotypal personality disorder were "weak" and "affirmatively hurtful" because of the lack of a thorough biopsychosocial history, failure to obtain neuropsychological and neurological evaluations, and Angelillo's inability to opine about prior reports of brain damage. (Id. at PageID 14128–29, 14143.)

Odom argues that all these deficiencies reflect counsel's failure to understand that trauma, mental health, and mitigation are not mutually exclusive in the defense of a capital case.

(See id. at PageID 14130–32.) He contends that numerous individuals, from family members[8] to neighbors and others with whom Odom interacted in his past should have been interviewed to highlight the abuse and dysfunction he experienced. (Id. at PageID 14133–38.) Odom asserts that, if his counsel had conducted the "constitutionally required investigation," jurors would have been able "to place Mr. Odom's traumatic life history, structural brain damage, significant cognitive impairments, and positive prison adjustment on the mitigating side of the scale, resulting in a reasonable probability that at least one juror would have struck a different balance." (Id. at PageID 14150.)

Odom further alleges that counsel was ineffective for failing to retain a neuropsychologist and neurologist to testify about evaluations that established his severe cognitive deficits and brain damage. (Id. at PageID 14138–43.) He contends that, had counsel conducted the appropriate testing and retained the appropriate experts, they would have understood that a diagnosis of a personality disorder was invalid because of his brain damage. (Id. at PageID 14143–44.) He asserts that his counsel's deficient performance resulted in "the affirmative presentation of proof" that prejudiced him during the penalty phase of his case. (Id. at PageID 14144.)

Odom's argument that counsel was ineffective for failing to investigate whether he had brain damage is based on a single, normal EEG from 1978 when a prior abnormal reading and other evidence suggested he suffered from brain damage. (Id. at PageID 14144–45.) He relies

[8] A post-conviction exhibit from McAfee's file says that some of Odom's family members were "adamant about not testifying" and did not want him to have their contact information because he had "a great deal of anger" toward his family and had "threatened them when they do not do what he asks." (ECF No. 21-17 at PageID 10195). This is compounded by the fact that a prior victim was a family friend, and "though [the family] care[s] about him, they are scared of him." (Id.)

on Merikangas's explanation that a normal EEG reading after an abnormal reading does not indicate healthy brain function because an EEG measures brain function at a discrete moment in time. (Id. at PageID 14144.) According to Odom, counsel should have consulted with a neurologist to avoid making the uninformed decision to forgo presenting evidence of brain damage. (Id. at PageID 14145.)

Taking all his IAC-Mitigation arguments together, Odom asserts that he has made plausible claims for relief based on Strickland's deficient performance prong. (ECF No. 64-1 at PageID 14840–41.) He contends that he "must demonstrate the quantum of mitigation proof known to counsel and compare that to the mitigation proof mustered in [his] petition. (Id. at PageID 14842.) He argues that the most expeditious way to obtain this information is to "ask counsel and determine what investigative steps were taken to identify mitigation evidence, whether counsel was aware of mitigation evidence, and whether strategic decisions were made to withhold mitigating evidence." (Id.) Odom contends that "a petition that contains specific allegations of ineffective assistance of counsel meets the 'good cause' requirement when 'trial strategy is an issue' and when counsel's 'trial tactics and strategy' are implicated by the specific allegations." (Id. at PageID 14842 (citation omitted).)

Odom acknowledges that his IAC-Mitigation claim was presented, to some extent, in state court. But he contends that the scope of his federal habeas claim is broader than the state court claim. (ECF No. 21-1 at PageID 8092–8105, 8121–45; ECF No. 21-4 at PageID 8574–8643; ECF No. 49 at PageID 14719–21.) For example, he points to new evidence in his amended habeas petition, including the identification of sixteen separate categories of witnesses that should have been interviewed. (ECF No. 49 at PageID 14721.) Given the IAC-Mitigation claim's broader scope, Odom argues that it is a new claim for which he can establish cause and

prejudice under Martinez. (ECF No. 49 at PageID 14721.) Alternatively, Odom contends that new evidence has fundamentally altered the claim such that it is new and procedurally defaulted, and that Pinholster does not bar discovery. (See ECF No. 49 at PageID 14718–25; see ECF No. 77 at PageID 15050–55.)

However, the Warden argues that Odom's claim does not become "new" because Odom now wishes to introduce new evidence. (ECF No. 70 at PageID 15009 (citation omitted).) Instead, he asserts that federal court review is limited to the state court record and Odom is not entitled to discovery on his IAC-Mitigation claim. (Id.) Further, the Warden views discovery as inappropriate because Odom has failed to "present[] specific allegations [that] give this Court 'reason to believe that [Odom] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" (Id. at PageID 15010. (quoting Bracy v. Gramley, 520 U.S. 899, 908–09 (1997).) That is, the Warden insists that Odom has failed to demonstrate how deposing resentencing counsel would lead to new evidence because testimony from resentencing counsel on issues related to his IAC-Mitigation claim already exists. (Id. at PageID 15010–11.) The Warden further contends that the failure to present additional mitigation evidence does not rise to the level of a constitutional violation when that unpresented evidence is merely cumulative and does not substantively differ from evidence previously presented. (Id. at PageID 15011.) In support of his arguments, the Warden notes that "counsel were 'able to walk a very fine line: present all of the evidence of the Petitioner's limitations . . . without also presenting evidence that the Petitioner suffered from a degenerative disease that would make him dangerous in the future.'" (Id. (citing Odom, 2017 WL 4764908, at *31).) Therefore, the Warden argues, Odom has not shown good cause for discovery on the IAC-Mitigation claim because discovery would be unlikely to resolve factual disputes that would entitle him to relief. (Id. at PageID 15012.)

Odom's IAC-Mitigation claim was adjudicated on the merits in state court. See Odom, 2017 WL 4764908, at *24–32. Trial counsel and resentencing counsel have testified. And while new evidence might strengthen the thrust of his IAC-Mitigation claim, it does not make his claim new but instead "merely provides additional proof of a claim already adjudicated on the merits." Sanders, 168 F.4th at 863 (quoting Franklin v. Jenkins, 839 F.3d 465, 474–75 (6th Cir. 2016)).

In asserting that his habeas claim has been fundamentally altered, Odom focuses, in part, on the allegations raised in the post-conviction court. However, Odom's focus is misplaced. For one, Odom fails to account for the substantial evidence that was presented in his post-conviction proceedings and the arguments exhausted on his post-conviction appeal. At his post-conviction evidentiary hearing, many individuals offered testimony on a myriad of topics relevant to Odom's IAC-Mitigation claim.[9] (See ECF No. 21-10 at PageID 8971–72; ECF No. 21-12 at PageID 9350–51; ECF No. 21-14 at PageID 9663.) Moreover, Odom's post-conviction appellate counsel alleged that Odom's trial counsel was ineffective for failing to "investigate, obtain, and present evidence of neurological and cognitive impairments as mitigation, despite indications of those impairments existing since 1974." (ECF No. 22-30 at PageID 13406.) Post-conviction appellate counsel described a history of abuse Odom experienced at the hands of his biological family, adoptive family, various caretakers, and individuals at Parchman. (Id. at PageID 13386–

[9] Those individuals included Marty McAfee, Gerald Skahan, Carolyn Watkins, Betsy Chandler, Frank Nobles, Robert Tubwell, Tora Brawley, Alysandra Finn, James Merikangas, Sean Lester, James Hill, Glori Shettles, and William D. Merritt. (See ECF No. 21-10 at PageID 8971–72; ECF No. 21-12 at PageID 9350–51; ECF No. 21-14 at PageID 9663.) Testimony covered topics such as the guilt and mitigation investigations, counsel's strategy at trial and on resentencing, Odom's incarceration at Parchman prison and juvenile training schools, psychological evaluations, Odom's IQ, intellectual disability, neuropsychological impairments, drug use, neurological damage, head trauma, fetal alcohol syndrome, his biological and adoptive families, syphilis, various abuses and trauma in his social history, and the remaining forensic evidence related to the murder. (See generally ECF No. 21-10; ECF No. 21-12; ECF No. 21-14.)

92.) The state post-conviction appeal addressed Odom's mental health history including the various evaluations and diagnoses and the unanswered questions about Odom's brain damage and neurological state. (Id. at PageID 13392–99.)

Although Odom claims that a bevy of witnesses should have been interviewed, he fails to allege the nature of these witnesses' potential testimony and how it would substantively differ from the testimony already presented. That is, he has not demonstrated how additional testimony would be more than cumulative. As the Tennessee Court of Criminal Appeals explained, "even assuming counsel should have called additional witnesses to testify about the abuse . . . [Odom] suffered, the strength of the aggravating circumstances weighs against a finding of prejudice." Odom, 2017 WL 4764908, at *32. Odom's IAC-Mitigation claim amounts to no more than "'new' evidence [that] is simply more evidence for the same ineffective assistance of counsel claim" he previously litigated. Sanders, 168 F.4th at 863. And even if new evidence did transform Odom's IAC-Mitigation claim into a new claim, it would still be procedurally defaulted, and he has failed to satisfy the standard to overcome procedural default. See Sanders, 168 F.4th at 862–63. Odom is also barred from discovery because, based on this posture, this Court cannot consider evidence outside of the record before the state court. See Loza v. Mitchell, 766 F.3d 466, 495 (6th Cir. 2014);

Finally, he asserts that he is entitled to de novo review for any exhausted portion of his IAC-Mitigation claim because the state court's ruling was contrary to and an unreasonable application of Strickland and based on an unreasonable determination of facts. (ECF No. 49 at PageID 14721–25.) However, review is inappropriate where the claim has been adjudicated on the merits.

Because Odom has not shown good cause for discovery on his IAC-Mitigation claim, his requests for the depositions of trial and resentencing counsel on the IAC-Mitigation claim are **DENIED**.

### iii. The Guilt Phase Ineffective Assistance Claims

For his IAC-Investigation and IAC-Fingerprint claims, Odom seeks to obtain the depositions of trial counsel, resentencing counsel, and fingerprint examiner James Holder. (See ECF No. 64-1 at PageID 14843–47.) The Warden argues that both claims are fully exhausted, limiting review to the record before the sate court adjudicating these claims and prohibiting Odom from obtaining discovery to introduce new evidence in support of these claims. (ECF No. 70 at PageID 15012 (citing Pinholster, 563 U.S. at 181).) The Warden also asserts that Odom has not demonstrated good cause for the discovery he requests related to these claims. (Id.) The Warden also argues that additional interviews of law enforcement would be futile given a 2021 DNA test linking Odom to the rape and murder. (ECF No. 70 at PageID 15012–13.) He further notes that Holder testified at trial and that the prior opportunity to cross-examine Holder mitigates the need for a deposition. (Id. at PageID 15013.)

#### a. The IAC-Investigation Claim

Odom premises his IAC-Investigation claim on counsel's failure to adequately address unreliable evidence used to convict him. (ECF No. 26 at PageID 14152.) The purportedly unreliable evidence includes Odom's confession, the knife he possessed when he was arrested, and a questionable fingerprint identification. (ECF No. 26 at PageID 14152.) He alleges that his counsel was ineffective for failing to investigate and put on proof that: (1) his confession was false and coerced; (2) he has neurocognitive deficits and is severely mentally ill; (3) the fingerprint evidence and identification was unreliable; (4) the knife is inconsistent with the

victim's wounds; (5) biological evidence taken from the victim does not match Odom; (6) numerous other suspects were identified; and (6) the blood on Odom's clothing was not the victim's. (Id. at PageID 14152–53.)

Many of Odom's IAC-Investigation arguments mirror those made in support of his IAC-Atkins and IAC-Mitigation claims. He alleges that new evidence related to his IAC-Investigation claim exists and "that [he] should have been able to present in support of [an] otherwise exhausted claim but was thwarted from doing so by the turnover and resulting chaos at [the] [OPCD] and the state post-conviction court's denial of adequate time and resources." (ECF No. 49 at PageID 14725.) Odom also contends that the new evidence fundamentally alters the IAC-Investigation claim making it a different, procedurally defaulted claim. (Id. at PageID 14725.) He alleges that he has put forth

> a dizzying list of ways in which both eras of trial counsel failed to investigate and present a defense, including scores of specific, critical witnesses that counsel failed to interview; records that counsel failed to obtain; specific experts that counsel should have consulted but failed to do so; and critical points that should have been demonstrated but were not.

(Id. at PageID 14726–27.)

Odom asserts that his IAC-Investigation claim was not exhausted on post-conviction appeal given the dearth of well-developed arguments on investigation-related issues in his state post-conviction petition and amended petition. (Id. at PageID 14727.) In contrast, he points to his federal habeas petition, which enumerates sixteen points of proof that counsel should have investigated and forty-eight bullet points of failure to investigate and present a defense based on new evidence not developed in the state post-conviction proceedings. (Id. at PageID 14728.)

Odom further asserts that he is entitled to federal review of his IAC-Investigation claim under Martinez because he has cause and prejudice for the default of this new claim. (Id. at

PageID 14729.) He argues that, to the extent any portion of the IAC-Investigation claim is determined to be exhausted, he is still entitled to review because the state court's ruling is contrary to and/or an unreasonable application of clearly established federal law. (Id.)

Odom is not entitled to discovery on his IAC-Investigation claim. He presented his guilt-phase ineffective assistance claims, which includes his IAC-Investigation claim, on post-conviction appeal in state courts. Odom, 2017 WL 4764908, at *22–24. The Tennessee Court of Criminal Appeals found that Odom failed to show prejudice because he did not show what testimony could have helped him, and because he submitted no evidence about the crime scene or other suspects. Id. Additionally, Odom's IAC-Investigation claim is defaulted, and he has failed to show good cause for the claim's procedural default. "[P]ost-conviction counsel's failure to take all possible steps to fully develop a claim cannot be the 'cause' of a default as long as counsel properly raised the claim and made a good-faith effort in presenting it." Hugueley, 964 F.3d at 499. And, like his IAC-Mitigation claim, Odom's IAC-Investigation claim only presents "new evidence" by way of "more evidence for the same ineffective assistance of counsel claim" he previously litigated. Sanders, 168 F.4th at 863. New evidence of a claim does not make the claim itself new. Finally, this Court does not consider additional evidence beyond that presented in the state courts. See Pinholster, 563 U.S. at 181–82. Odom's discovery requests on the IAC-Investigation claim are **DENIED**.

**b. The IAC-Fingerprint Claim**

In his IAC-Fingerprint Claim, Odom argues that his counsel were ineffective for failing to object to the admissibility of fingerprint examiner James Holder's expert testimony about a latent fingerprint recovered from the victim's car. He contends that Holder used a flawed identification methodology rendering his testimony violative of the Constitution and federal law.

(ECF No. 26 at PageID 14166–78.) He also argues that his counsel should have investigated the evidence and hired a defense expert. (Id. at PageID 14166.) Odom concedes that the claim is procedurally defaulted but insists that he can show cause and prejudice for the default and that he is actually innocent of the crime. (ECF No. 26 at PageID 14178–80.)

The Warden argues that the IAC-Fingerprint Claim was "subsumed" by Odom's claims on post-conviction related to counsels' failure to adequately challenge the fingerprint evidence. (ECF No. 34 at PageID 14359.) However, according to Odom, the Warden "does not fully concede" that the IAC-Fingerprint claim is defaulted. (ECF No. 49 at PageID 14732–35.) So, as with his other claims, Odom contends "that [he] should have been able to present [new evidence] in support of an otherwise exhausted claim but was thwarted from doing so" given dysfunction in the OPCD and the state post-conviction court's denial of adequate time and resources. (Id.)

Odom does not specify what information he seeks from Holder. (See ECF No. 64.) The allegations in Odom's Amended Petition suggest that this discovery would likely relate to Odom's IAC-Investigation allegations that counsel should have interviewed Holder to obtain information about Holder's methodology, his qualifications as a latent print examiner, and his purported biases. (See ECF No. 26 at PageID 14155–57.) Or, the discovery request could relate to the IAC-Fingerprint claim, which alleges that trial counsel was ineffective for failing to have Holder's testimony excluded. (Id. at PageID 14165–67.)

The Warden argues that Odom has not shown good cause for additional testimony from Holder because Holder testified at trial and trial counsel had the opportunity to cross examine him. (ECF No. 70 at PageID 15013 (citing ECF No. 17-5 at PageID 648–54).) Further, the Warden argues that part of Odom's IAC-Fingerprint claim is based on Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), which was decided eight months after Odom's trial. (Id.)

The Warden also argues that a portion of Odom's IAC-Fingerprint claim is premised on scrutiny of Holder's methodology that did not emerge until twelve years after Odom's trial. (Id.) Therefore, the Warden contends, this information cannot form a basis for the IAC-Fingerprint claim. (Id. at PageID 15013–14.)

Odom raised an ineffective assistance of counsel claim about fingerprint identification on post-conviction appeal. (See ECF No. 22-30 at PageID 13505.) The Tennessee Court of Criminal Appeals considered the claim waived on appeal because no argument was offered and determined that there was no prejudice. Odom, 2017 WL 476908, at *23. Because the court of criminal appeals' prejudice determination is an adjudication on the merits, the development of additional evidence outside the record before the state court is barred. Further, trial counsel, resentencing counsel and Holder have testified, and Odom has not shown good cause for additional testimony on the IAC-Fingerprint claim. Odom's requests for discovery on the IAC-Fingerprint claim are **DENIED**.

**c. OPCD Documents**

Odom seeks documents from the OPCD, including budgets, caseload statistics, and correspondence regarding Odom's case. (ECF No. 64-1 at PageID 14847.) He argues that he can show good cause for discovery of these documents and asserts that evidentiary developments would excuse the procedural default of his ineffective assistance of trial counsel claims. (Id. at PageID 14847–50.) He contends that the OPCD was "structurally deficient, resulting in constant turnover of staff, negligent represent, and inadequate investigation" and that the "individual ineffectiveness" of Odom's post-conviction counsel was compounded by those structural deficits. (Id. at PageID 14848, 14850.) He asserts that there has been no inquiry into post-conviction counsel's performance and that his claims rely on "evidence extrinsic to the record."

(Id. at PageID 14849.) He contends that the OPCD's instability, staff turnover, turmoil, and inability to meet court-imposed deadlines are relevant to demonstrate ineffective assistance of counsel and that the requested OPCD documents are "appropriate" to reconstruct the circumstance of post-conviction counsel's challenged conduct. (Id. at PageID 14850.)

But Odom cannot distinguish his post-conviction counsel's performance, who worked for the OPCD, from the purported dysfunction of OPCD as a whole. He has not demonstrated good cause for discovery from the OPCD. His requests for subpoenas directed to the OPCD are **DENIED**.

**iv. Discovery About Odom's Statement**

To support Odom's IAC-Investigation claim and the Statement Claim, Odom requests the depositions of: (1) Sergeant Ronnie McWilliams; (2) Sergeant R.D. Roleson; (3) Lieutenant J.D. Douglas; (4) MPD transcriptionist Tonia D. Tiller; and (5) MPD transcriptionist Taertie L. Thompson. (ECF No. 64-1 at PageID 14850–51.) Odom also seeks a subpoena for several MPD documents. (ECF No. 64-1 at PageID 14851.)

Odom argues that he has good cause for discovery based on allegations in the IAC-Investigation claim that counsel failed to challenge the admission of Odom's statement. As discussed above, Odom is not entitled to discovery on the IAC-Investigation claim. He also seeks discovery on his Statement Claim because, according to him, his statement "bears the hallmarks of a false and coerced statement that was unconstitutionally obtained." (Id.) In his Statement Claim, he alleges that his statement was taken in violation of the Fifth and Fourteenth Amendments; was not given freely and voluntarily, and that police's failure to record the statement violated his due process rights. (ECF No. 26 at PageID 14237.) But trial counsel filed a motion to suppress, and both Odom and Sgt. McWilliams, who obtained the confession from

Odom, testified at a hearing on the motion. (Id.) And Odom acknowledges that the Statement Claim was adjudicated on the merits in state court. (Id. at PageID 14243.) See Odom, 2017 WL 4764908, at *21.

The Warden contends that discovery is unavailable because there is no dispute that the Statement Claim was adjudicated on the merits and that the habeas court is limited to the review of the evidence before the state court. (ECF No. 70 at PageID 15017.) Further, the Warden asserts that a 2021 DNA test linking Odom to the crime undermines Odom's argument that his statement was coerced and unreliable. (Id.)

Odom has not demonstrated good cause for the depositions of the MPD officers and transcriptionists or the subpoena of MPD documents. The statement was unsuccessfully challenged at the trial level. The development of additional evidence outside the record before the state court is barred. Review is limited to the record before the state court. See Pinholster, 563 U.S. at 181–82. Odom has not shown good cause because the evidence sought is unlikely to entitle him to relief on these claims. Odom's requests for discovery about his statement are **DENIED**.

## CONCLUSION

For these reasons stated above, Odom has failed to demonstrate good cause for the discovery he seeks. Petitioner's Habeas Rule 6 Motion is **DENIED**.

The Court previously advised that "[t]he parties' respective positions should be adequately briefed in their pleadings . . . to enable a final ruling from the Court, subject to the Court's determination of the need for additional discovery or an evidentiary hearing." (ECF No. 6 at PageID 36.) The parties have completed briefing. (See ECF No. 26; ECF No. 34; ECF No. 49.) With the resolution of this matter, this case is ripe for disposition.

**IT IS SO ORDERED**, this 29th day of September, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE